The court will proceed to the sixth case, United States v. Ballard. Ms. Dick. Good afternoon, Your Honors. May it please the Court, Counsel. I am here on behalf of Jesse Ballard in this matter, and I want to begin, Your Honor, by addressing the Rahoff issue in this case, which we raised. Obviously, it was a relatively new issue at the time that we raised it, having come about after Mr. Ballard was sentenced. However, this Court did issue an opinion this week, I believe, of January the 10th, that was provided to me by counsel for the government, United States v. Williams, in that basically on the facts of that case where the fact of the felony was not explicitly mentioned at the plea colloquy, the Court said the defendant would have an uphill battle. And in Mr. Ballard's case, the record is not silent. Mr. Norwood, who handled the case for the government at sentencing, said that he had been convicted of multiple felony convictions. So we will be conceding that issue on that basis, Your Honor. I'm sorry, I didn't hear. We would be conceding. I don't believe Williams leaves us any wiggle room on this particular issue. But I would like to move on to the issue of the upward variance here in this particular case. We believe that the upward variance is both procedurally and substantively unreasonable, beginning with the fact that there was an insufficient explanation of the basis for the upward variance. This case has somewhat of a unique history in that there was an original sentencing in the case. The government sought an appeal, then conceded error in the case before we ever got to briefing, or got to argument at least, and the case went back down for resentencing. That concession made a major difference in the potential sentence here because originally the Court had determined that my client was an armed career criminal with a 15-year mandatory minimum, and on resentencing he had a 10-year maximum sentence. In the original case, the judge basically considered all of the considered factors in my client's background and granted a 10% upward variance approximately from the guideline range. On resentencing, with a substantially lower guideline range and, of course, also with a cap of 10 years, the Court considered the same factors, and in that case at the time of sentencing imposed— and I want to clarify when I say the same factors. Actually, there were some additional factors that we don't think got sufficient weight in consideration, but the resentencing then imposed a sentence that was approximately 150% above the high end of the guideline range, and there is no additional justification when you consider the factors that the judge considered. His primary concern was my client's criminal history, which is a factor that was adequately considered by the sentencing guidelines. The sentencing guidelines intentionally exclude counting priors where the period of supervision or incarceration was within the last 15 years. My client had several priors that were not counted, and he had a significant number of points that did count, 33 criminal history points. So the Court referred to that, and also we did talk about— and the Court did talk about the fact that he continued to have criminal history up until the last several years of his most recent incarceration, and at the time that this case was going on, he was incarcerated in state custody for being a repeat offender of driving while license suspended, and that's what seven of the convictions in the last 10 years before he went to custody were for, driving while license suspended. So there was a dramatic change in his criminal history, and that particular factor is one of the things that the Sentencing Commission considered, both in considering older defendants and the fact that you shouldn't hold somebody as accountable for that criminal history that is 25 and 30 years old. He was 52 at the time of this sentencing. One of the offenses that the Court talked about, he was serving when he was 18 years old, and the Court completely ignored the Commission's findings about age of sentences and recidivism and counting or not counting those. When you compare the two sentencing colloquies that were provided by the judge at the two sentencings, they're almost identical in consideration of the 33 criminal history points. The reference to my client possibly being bipolar determined that he said he was, but there was no verification of that. Having a minor child, the facts of the offense were also one of the things that were considered, and the facts of this offense are clearly not as heinous as in many other felon in possession cases. This is a gentleman whose girlfriend had a firearm for personal protection. He takes a picture of himself with the firearm and actually with the firearm pointed at his chin. This isn't somebody who went and obtained a firearm to go out and commit other illegal crimes, so this isn't the most heinous crime. Two things happened in the interim that would have actually supported a lower sentence. One is that my client, while serving in state custody, did something he had never done before, and that was he cooperated with authorities when he found out that there was a plan to attack a prison guard. And he went to authorities, he provided information. That is contained in the sealed transcript, that information is. And interestingly, in that sealed transcript, the government says, well, I was going to ask for 120 months here, but because he did that, I'll ask for 108 months, which is exactly where the court went on this. The other factor is that my client participated in drug treatment, drug treatment program in a way that he had never done so before, and told the court he realized he had to deal with this to be able to basically to not be back in prison. And he asked the court to recommend additional treatment for him. So the court focused on his drinking and using drugs as a basis for supporting the need for the longer sentence, but basically didn't factor in the fact that he was trying to address that problem now. And AH accounts for a lot of that. The Sentencing Commission has noted that AH accounts for a lot of that. So we started saying he grew out of it, I guess. I think he's starting to grow out of it. Obviously, he needs to deal with his driver's license issues, which he told the court he was doing, that he had taken steps to be able to deal with that. And for the first time, I think he said since 18 years old, he hoped to have a driver's license when he got out of custody. So he was actually maturing maybe more slowly than we might have hoped as a society, but he was headed in the right direction. None of that is factored in when you consider that there was 150% upward variance in this case. The court considered 10% to be adequate in the first sentencing, and there's nothing explaining why 10% was not adequate in the second sentencing if the court was going to do that. I think there's also, as pointed out in the Kirkpatrick decision, this problem that when we leap towards the high end, the statutory maximum, there has to be consideration that worse cases may come along, and that makes that statutory maximum less significant in a way. So when you have an individual who possesses somebody else's firearm in their home and takes a picture of themselves versus somebody who steals a firearm from somebody's home and goes out and kills somebody else with it, and you have the felon in possession factors in and you're looking at offense conduct, you've diminished the importance of that. And I think that's what the Kirkpatrick decision talks about. You said something about in his first sentencing it was diminished by some percentage. Would you say that? No, I said the sentence, the variance was 10% in the original sentencing. It was a 10% upward variance versus the 150. What I was saying about diminishing was that when you're looking at the facts of the case itself and you look at the facts of Mr. Ballard's case versus the facts of somebody who steals a firearm and uses it to commit a more heinous crime, you have diminished the significance of that statutory maximum when you do that, and I think that's basically what the Kirkpatrick decision was saying. So you weren't referring to whatever that 232 sentence? Not in that example. I was not. That the 10% variance that the judge justified in the first case basically would have, on those same facts, the 10% variance would have been justified in this case, not 150% variance because he didn't factor in. There was nothing new that would have justified going up, and, in fact, there were things that would have justified reducing that instead of going up. And I see that I am out of time. Thank you, Mr. Day. Mr. Likens. Good afternoon again, Your Honors. In light of counsel's conceding the rehab issue, I will quickly talk about the alleged sentencing error in this case, and I think the overriding factor for the district court was, of course, the 3553 factor of incapacitation. It explains why when he had a 30-year sentence or more available to him, he imposed 232 months, and it also explains why when he only had a 10-year cap that he imposed a sentence of nine years. And if you look at the district court's reasons that it gave in this case, it's obvious that he focused on the incapacitation factor. As he appropriately should have. This was a defendant who had 33 criminal history points, countable criminal history points, and contrary to maybe the impression that you could get from this morning's presentation, those weren't all traffic offenses. I mean, you don't get 33 criminal history points by committing traffic offenses. This defendant had a long history of serious crimes, some of them violent. He has a previous conviction for being a felon in possession of a firearm. So he had 33 criminal history points, and as the district court noted, on top of that, he would have had 20 additional criminal history points. It's just that he's been a criminal so long they didn't count. So you have an unbroken string of criminality, and if the district court could legitimately, and I think this court has found, a district court can legitimately emphasize one of those 3553A factors were appropriate, and in this case, the district court thought incapacitation was the most overriding factor, and it provided an adequate basis for the sentence it imposed in light of that factor. Other than that, my colleague who drafted the brief in this case, Mr. Norwood, did a stellar job of setting forth the government's position on this particular issue, and if this court has no questions. You did not make a recommendation as to the sentence? We recommended the sentence the court imposed, 108 months, and that's because of the factor that counsel referred to, that he had provided information while he was incarcerated about a potential injury upcoming to a guard. So, yeah, we did recommend the sentence the court imposed. Mr. Liggins, do you think there was, reading the record, do you believe that the judge relied on 3553 factors, or was he kind of looking at an armed career or criminal approach? I mean, do you think he gave adequate explanation for the substantial increase? Yes, I do believe that. And, you know, this is, it's also a fact, I think, that there are some grounds for departures that require more explanations than others, and I think when I see, I've been doing this for almost 30 years, and when I see a defendant with 33 criminal history points, that tells me something about that defendant. It objectively tells me something about that defendant, and what it tells me is that they cannot be deterred. And I believe that Judge Gilbert has been doing what he's been doing for almost 30 years, and he does not see very many criminal defendants with 33 criminal history points. I think he noted that. And my guess is this court doesn't see that many. When you have a defendant with that many criminal history points, and if you have also a long criminal history that doesn't even count, that tells you something, and it tells you something about incapacitation and the need for it. And so for those reasons, we ask the court to affirm the sentence. Thank you, Lagan. Ms. Day, we don't have a lot of time, but you may have another minute. I will be very brief, Your Honor. Mr. Lagan said that some grounds require more explanation than others. I believe is what he said, and the judge went for incapacitation here. But I think that that misses the mark because the reality is that certain factors have to be considered here, and the judge didn't consider anything different in the second sentencing than he did in the first sentencing. And he used the same factors to justify a 10% increase as he did to justify a 150% increase, and that's not appropriate. Your Honor, we... Do you know how many times he's appeared before Judge Gilbert? How many times this client has appeared before Judge Gilbert? This was the first case. I believe this was his first federal case. Everything else was state, and obviously in the last 10 years, it was state traffic matters. Your Honor, we are asking for remand for resentencing in this matter. Thank you so much. Thank you, Ms. Day. Thank you, Ms. Lagan. Safe trip home. Case is taken under advisement. Court will stand in recess. Thank you.